```
                UNITED STATES DISTRICT COURT              FILED
                NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION                01 SEP 20 PM 4:19

                                                       U.S. DISTRICT COURT
VONDA VASSAR,                    )                      N.D. OF ALABAMA
                                 )
       Plaintiff,                )
                                 )
vs.                              )        Civil Action No. CV-00-S-2500-S
                                 )
SHANER OPERATING CORPORATION     )
d/b/a HOLIDAY INN AIRPORT,       )                        ENTERED
                                 )
       Defendant.                )                       SEP 20 2001
```

## MEMORANDUM OPINION

Plaintiff, Vonda Vassar, was discharged from her position as a server in the restaurant of the Holiday Inn hotel at the Birmingham, Alabama Airport, following a disagreement with her supervisor. Plaintiff contends that she actually was discharged in retaliation for complaining about a sexually harassing comment made to her by defendant's Director of Food and Beverage, and that defendant therefore violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

The action presently is before the court on two motions for summary judgment, both filed by defendant (doc. nos. 12 & 23). Defendant argues in the brief submitted in support of its first motion (doc. no. 13) that plaintiff's Title VII claim is barred by the determination of the Alabama Department of Industrial Relations that plaintiff was not eligible for unemployment compensation benefits, because she was fired for misconduct. In the second motion, defendant contends that plaintiff's complaint was not timely filed or, in the alternative, that there is no genuine issue of material fact, and that defendant is entitled to judgment as a matter of law.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

## II. FACTS

Defendant owns and operates a hotel near the Birmingham, Alabama Airport, doing business under the name "Holiday Inn Airport." Vonda Vassar was hired in May of 1999 to work as a server in the restaurant of that facility. Her regular work schedule was from 5:30 a.m. until 2:00 p.m. She

was the first to arrive in the restaurant in the morning, and was responsible for setting up the restaurant.[1] Plaintiff's immediate supervisor at the time she was discharged was Dorrida Owens. Owens reported to Guntram Anderlik, the hotel's Director of Food and Beverage. Larry Goodwin was the hotel's General Manager.

Defendant's Employee Manual specified certain "unacceptable activities" for which an employee could be dismissed without warning. These "unacceptable activities" included "[i]nsubordination or refusing to obey instructions properly issued by your manager pertaining to your work."[2] The manual further provided that

> occurrences of any of the following activities, as well as violations of any Shaner Hotel Group rules or policies, may be subject to disciplinary action, including written warnings and possible immediate dismissal. This list is not all-inclusive and, notwithstanding this list, all employees remain employed "at will."
> ...
> Obscene or abusive language toward any manager, employee or customer; indifference or rudeness towards a customer or fellow employee; any disorderly/antagonistic conduct on Shaner Hotel Group premises.[3]

The Employee Manual also provided for a four-step, progressive disciplinary procedure for dealing with unacceptable behavior that did not lead to immediate dismissal, in the form of counseling, first written warning, second written warning, and dismissal.[4]

On July 28, 1999, plaintiff was late for her shift, due to difficulty in making child care arrangements. She was given a written coaching and counseling record, which she signed.[5]

On November 13, 1999, plaintiff received a "disciplinary action form," which described the

---

[1] Plaintiff's Evidentiary Submission (doc. no. 27), Ex. 1, at 31.

[2] Defendant's Evidentiary Submission in Support of its Motion for Summary Judgment (doc. no. 26), Ex. 11.

[3] *Id.*

[4] *Id.*

[5] *Id.*, Ex. 4.

following incident: "Vonda was scheduled to come in at 5:30. Vonda called a Front desk clerk at 7:30 and told her that she is on her way! This is against company policy, Vonda should have called the MOD [manager on duty] at least two hours before her scheduled time." While plaintiff's *signature* does not appear on this form, the following handwritten statement appears in the "employee comments" section: "That is true, but what about the time when Vonda comes in every morning at 5:30 a.m. and set [sic] up everything without any help. Vonda also have [sic] worked over a month without being off on the weekend." This form describes the action taken as a warning.[6]

Another disciplinary action form, dated December 8, 1999, describes a conflict between plaintiff and another employee, identified only as "Kela."[7] The "supervisor comments" section contains the following statements:

> Tues. around lunch time 'Kela' was asked by a customer for a refill and Vonda walked up and made a comment towards Kela and as a result, they passed words in front of customers. Vonda also told Kela last week that if she helped another one of her guests that she would kick her "*@."

The "other comments" section contains the following statement: Vonda needs to make an effort in getting along with other co-workers. Become more of a team player. These are my goals for Vonda." Plaintiff's signature does not appear on the form, and she recalls neither the referenced incident nor being disciplined for it.[8] This form describes the action taken as a "warning."

The last disciplinary action form is dated December 9, 1999. The "supervisor comments" section contains the following statements:

> Vonda was scheduled for 5:30 AM. She arrived on her station at 5:55. The Restaurant opens at 6:00 AM. When confronting her about her tardiness she answered in a very disrespectful way that I, Guntram [Anderlik], should be here then

---

[6] *Id.*, Ex. 5.

[7] *Id.*, Ex. 6.

[8] *Id.*, Ex. 7, at 65.

> to [sic]! I tolled [sic] her that is not her business! She told me, she never called in, and I should consider her good side! She kept ramplin [sic] on. I told her to do her business and stop keeping on talking about it.

Once again, this form was not signed by plaintiff, but it bears the signatures of a supervisor[9] and the hotel's general manager.[10] This form describes the action taken as "final warning."

Sometime in December of 1999, around the Christmas holiday, plaintiff served lunch to a group of the hotel's managers. When she inquired whether any of them wanted dessert, Guntram Anderlik said, "I would like to have something sweet, something sweet like Vonda Vasser."[11] Plaintiff replied, "Vonda is not sweet." Anderlik then responded, "She can be when she wants to be."[12] Plaintiff was offended, and walked away from the table.[13]

Plaintiff related the incident to some of her co-workers, who advised her to tell Larry Goodwin, the hotel's General Manager.[14] Plaintiff called Goodwin, but was told that he was on vacation, due to the holidays. Goodwin returned plaintiff's telephone call upon his return to the hotel. Plaintiff related what Anderlik had said, and Goodwin told her that he would look into the matter.[15] Since Anderlik was off work that day, Goodwin proposed that the three of them meet the following day.[16]

At the meeting, Goodwin recounted plaintiff's complaint to Anderlik, who said that he did not recall making the comment, but that, regardless, he was sorry that she was offended. Plaintiff

---

[9] It is not clear who signed the form, because the signature is illegible.

[10] *Id.*, Ex. 8. Plaintiff recalls being "written up" for tardiness on only one occasion. (Doc. no. 27, Ex. 1, at 66-67.)

[11] Doc. no. 27, Ex. 1, at 80.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 101.

[15] *Id.* at 84.

[16] *Id.*

-5-

accepted Anderlik's apology.[17]

Prior to the lunch incident, plaintiff and Anderlik had a good working relationship. She said that he was very proud of her when she was named the hotel's "Employee of the Month" in November of 1999.[18] After she complained about his comment, however, Anderlik was not as nice. Plaintiff admitted, nevertheless, that all of the employees found Anderlik hard to get along with, and that "[h]e was just demanding and — he was a German. It is just something about a German person."[19] Plaintiff also admitted that Anderlik had not made any other comments that she found sexually offensive or inappropriate, either before or after the lunch incident.[20]

On January 10, 2000, plaintiff had a disagreement with her immediate supervisor, Dorrida Owens, when plaintiff failed to place a ticket on a customer's table.[21] The restaurant offered a buffet and menu service, and the normal procedure followed by servers was to place a ticket on the customer's table after the customer placed an order. When Owens noticed that plaintiff had not placed a ticket on that table, she did so herself. Plaintiff and Owens then exchanged words and called each other names. As a result, Goodwin called both employees into his office. Goodwin asked plaintiff what had happened, and then suggested that plaintiff go home for the day and "cool down."[22]

When plaintiff reported the following day, Owens instructed her to not seat customers in her

---

[17] *Id.* at 85.

[18] *Id.* at 95.

[19] *Id.* at 94-95.

[20] *Id.* at 87-89.

[21] According to Owens' declaration, the customers seated at that table were plaintiff's mother and stepfather, whom Owens recognized from their prior visit to the restaurant. Owens also stated that they did not pay the ticket, and that she asked plaintiff to pay it. (Doc. no. 26, Ex. 15.)

[22] Doc. no. 27, Ex. 1, at 51.

section until it was cleaned.[23] When plaintiff observed Owens seating a customer in her section, however, she also seated a customer in that section.[24] Owens became upset that plaintiff had disregarded her instructions, and informed Anderlik. Anderlik called plaintiff into his office, and told her that he was considering sending her home. He left the office, then returned about thirty minutes later and informed her that her employment was terminated for insubordination.[25] Harriet Rijonis, the hotel's human resources manager, also was present.[26]

Goodwin made the decision to terminate plaintiff's employment based on information provided to him by Owens and Anderlik.[27]

Plaintiff believes that she was terminated because she complained about Anderlik's comment. She filed a charge of discrimination with the Equal Employment Opportunity Commission on January 20, 2000, and received notice of her right to sue on June 8, 2000. She filed a complaint in this court on September 6, 2000.

### III. DISCUSSION

Defendant's first motion for summary judgment asserts that plaintiff is collaterally estopped from pursuing her Title VII retaliation claim because the Alabama Department of Industrial Relations determined that she was fired for misconduct and, thus, was ineligible for unemployment compensation benefits. Plaintiff did not appeal that determination. Defendant's second motion for summary judgment contends that plaintiff did not timely file her complaint following the Equal Employment Opportunity Commission's issuance of a notice of right to sue. Alternatively,

---

[23] *Id.* at 52.

[24] *Id.* at 55.

[25] *Id.* at 56.

[26] *Id.*

[27] Doc. no. 26, Ex. 9, at 41.

-7-

defendant contends that there are no genuine issues of material fact, and that judgment should be entered in its favor, as a matter of law.

A.  **Preclusive Effect of an Unreviewed Agency Decision**

Res judicata — also called "claim preclusion" — is a legal principle providing that a final judgment rendered on the merits precludes the parties to the action, or those in privity with them, from relitigating all claims that were (or could have been) litigated in the prior action. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

In contrast, the concept of collateral estoppel — or "issue preclusion" — provides that, once a court has decided an issue necessary to its judgment, that judgment precludes relitigation of the same issue in a different action between the same parties. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 103 (1981).

The Supreme Court of Alabama differentiated the elements and functions of res judicata and collateral estoppel in *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933 (Ala. 1995), stating:

> For the doctrine of res judicata, or claim preclusion, to apply, the following elements are required: (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with the same parties, and (4) with the same subject matter presented in both actions. ... "Where these elements are present, the former suit bars any later suit *on the same cause of action, including issues [i.e.,* claims] *that were or could have been litigated in the prior case.*" *Lott v. Toomey*, 477 So. 2d 316, 319 (Ala. 1985).
>
> By way of showing the slight contrast, we note that our cases applying the doctrine of collateral estoppel, or issue preclusion, have required the following elements: (1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions. ... "Where these elements are present, the parties are barred from relitigating *issues actually litigated in a prior suit.*" *Lott*, 477 So. 2d at 319.

*Smith,* 653 So. 2d at 934 (emphasis added) (some citations omitted). For collateral estoppel to apply to an issue raised in an administrative proceeding, the Alabama Supreme Court has held that there must also have been an adequate *opportunity* for the parties to litigate the issues in such proceeding. *See Wal-Mart Stores, Inc. v. Smitherman,* 743 So. 2d 442, 445 (Ala. 1999).

While "Title 28 U.S.C. § 1738 governs the preclusive effect to be given the judgments and records of state courts, [it] is not applicable to ... [judicially] unreviewed state administrative" findings.[28] *University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635 (1986); *see also Gjellum v. City of Birmingham,* 829 F.2d 1056, 1061 (11th Cir. 1987) ("The full faith and credit statute, 28 U.S.C. § 1738, applies only to the judgments and records of state courts and not to decisions of state administrative agencies.").

Even so, there are occasions when administrative findings and decisions will have a preclusive effect on subsequent proceedings. For example, the Supreme Court has found "that Congress, [when] enacting the Reconstruction civil rights statutes [*e.g.,* 42 U.S.C. §§ 1981, 1983, and 1985], did not intend to create an exception to the general rules of preclusion." *Elliott,* 478 U.S. at 796-97, 106 S.Ct. at 3225. With respect to claims brought under those statutes, the Court has concluded:

> [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 799, 106 S.Ct. at 3226 (quoting *United States v. Utah Construction & Mining Co.,* 384 U.S.

---

[28] In pertinent part, 28 U.S.C. § 1738 provides that:
The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)) (footnote omitted). In the same opinion, however, the Court also held that judicially unreviewed decisions of a state administrative agency do *not have preclusive effect on an employee's Title VII discrimination claims. Elliott*, 478 U.S. at 796, 106 S.Ct. at 3225 ("[W]e conclude that ... Congress did not intend [for judicially] unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *see also Astoria Federal Savings and Loan Association v. Solimino,* 501 U.S. 104, 110, 111 S.Ct 2166, 2171, 115 L.Ed.2d 96 (1991) (judicially unreviewed state administrative findings do *not* have preclusive effect on a plaintiff's ADEA claim); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n.7, 102 S.Ct. 1883, 1891 n.7, 72 L.Ed.2d 262 (1982) (holding that it was "clear that *unreviewed* administrative determinations by state agencies ... should *not* preclude ... review [in federal court] *even if such a decision were to be afforded preclusive effect in a State's own courts*") (emphasis supplied); *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 647 (11th Cir. 1987) (denying preclusive effect to decisions by a state administrative agency that had not been judicially reviewed in state court in plaintiffs' ADEA action).

The *Elliott* Court cited two primary reasons for the different treatment of Title VII claims. First, "[u]nder 42 U.S.C. § 2000e-5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give 'substantial weight to the final findings and orders made by State and local authorities in proceedings commenced under State or local [employment discrimination] law.'" *Elliott*, 478 U.S. at 795, 106 S.Ct. at 3224.[29] The Court explained that "it

---

[29] 42 U.S.C. § 2000e-5(b) provides:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of charge ... on such employer ... within ten days, and shall make an investigation thereof. ... If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify

would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.* Second, the Court found that the legislative history of Title VII confirmed the conclusion that Congress intended that individuals be provided a "trial de novo on Title VII claim[s]." *Id.*

Here, notwithstanding that state administrative agency determinations are not binding in Title VII suits, there is no evidence before the court that the parties either had the opportunity to litigate, or actually litigated, the reason for plaintiff's termination from employment in administrative proceedings. All that the record contains is the bare determination, without factual findings, by the Alabama Department of Industrial Relations, Unemployment Compensation Agency, that plaintiff was disqualified for receipt of benefits because she was discharged for misconduct. Plaintiff therefore is not precluded from pursuing her Title VII claim.

**B.     Timeliness of Plaintiff's Complaint**

Defendant asserts that plaintiff did not timely file her complaint in this court. Under 42 U.S.C. § 2000e-5, an "aggrieved party" must file a civil action within 90 days of receipt of notice from the Equal Employment Opportunity Commission of her "right to sue." Plaintiff received her notice of right to sue on June 8, 2000, and filed a complaint in this court exactly 90 days thereafter, on September 6, 2000. Accordingly, plaintiff filed this civil action in accordance with the prescribed

---

the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. ... The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

statutory time limits.

C.     **Title VII Retaliation Claim**

"Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter [of Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII].

42 U.S.C. § 2000e-3(a). Congress thus recognized two bases for a claim of retaliation: one for *opposition* to discriminatory practices, and another for *participation* in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter.' ... And, under the participation clause, an employer may not retaliate against an employee because the employee 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.' ..."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Here, plaintiff proceeds under the opposition clause.

Generally speaking, a prima facie case of retaliation has three elements. A plaintiff must prove that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal linkage between the protected activity and the adverse employment action. *See, e.g., Bass v. Board of County Commissioners*, 256 F.3d 1095, 1117 (11th Cir. 2001) (Title VII); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)

(FMLA); *Gupta*, 212 F.3d at 587 (Title VII); *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (ADA); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998) (Title VII); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997) (Title VII); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) (Title VII); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (Title VII).

In addition, when a retaliation claim is based upon conduct falling under the opposition clause of 42 U.S.C. § 2000e-3(a), the plaintiff also must demonstrate a good faith, reasonable basis for believing that the underlying, allegedly discriminatory practices constituted a violation of Title VII, as distinguished from proving that the employer actually engaged in an unlawful employment practice. *See, e.g., Gupta*, 212 F.3d at 586 ("To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed.") (quoting *Meeks*, 15 F.3d at 1021) (internal quotation marks omitted); *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989) ("[P]laintiff need only have had a 'reasonable belief' that an unlawful employment practice was occurring.").

This additional element of a prima facie case for a retaliation claim under the opposition clause has two components, as the Eleventh Circuit observed in *Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997):

> We previously have recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). *It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component.* A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively reasonable* in light of the facts and records presented. It thus is not enough for a plaintiff to

> allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.
>
> A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a *prima facie* case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978). *See also Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a *prima facie* case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices."), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

*Id.* at 960 (emphasis in original) (footnote omitted); *see also, e.g., Gupta,* 212 F.3d at 586 ("Although the conduct [plaintiff] complained about was not so severe and pervasive that it altered her working conditions, we cannot say that she lacked a 'reasonable good faith belief' that she was being sexually harassed"); *Harper v. Blockbuster Entertainment Corporation,* 139 F.3d 1385, 1388 (11th Cir. 1998); *Meeks,* 15 F.3d at 1021; *EEOC v. White & Sons Enterprises,* 881 F.2d 1006, 1012 n.5 (11th Cir. 1989); *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989); *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir. 1978); I Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 656-57 (3d ed. 1996) ("The rationale is that appropriate opposition should not be chilled by fear of retaliation — even if, as a matter of fact or law, there is no violation.") (footnote omitted).

Plaintiff claims that she believed Anderlik's comment amounted to unlawful sexual harassment. Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive work environment.'"

*Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (some internal quotations omitted)); *see also Clark County School District v. Breeden,* — U.S. —, 121 S.Ct. 1508, 1509, 149 L.Ed.2d 509 (2001) (Title VII retaliation claim examining objective reasonableness that incident complained of constituted unlawful sexual harassment). As the Supreme Court has recently reiterated in the context of a Title VII retaliation claim:

> Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it is unreasonably interferes with an employee's work performance.'" *Faragher v. Boca Raton, supra,* at 787-788, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton, supra,* 118 S.Ct. 2275 (citation and quotation marks omitted).

*Breeden,* — U.S. at —, 121 S.Ct. at 1510.

The evidence is undisputed that Anderlik made only one comment that plaintiff found to be inappropriate or offensive. Plaintiff testified that, while Anderlik was not as friendly to her after she complained to the general manager, he did not treat her any worse than any of her co-workers. Moreover, when the general manager confronted Anderlik, he promptly apologized to plaintiff. While it is clear that plaintiff subjectively perceived Anderlik's comment to be offensive, it cannot be objectively said that this one, isolated incident was sufficiently severe, or that a reasonable person would conclude that it was actionable under Title VII.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's claim of retaliation in violation of Title VII must fail,

and defendant is entitled to summary judgment. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith. All other pending motions are due to be denied as moot.

DONE this **20th** day of September, 2001.

United States District Judge